1  ROBERT J. ROMERO (SBN 136539)
   DAVID I. DALBY (SBN 114750)
2  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
3  San Francisco, CA 94111
   Telephone:    415-362-6000
4  Facsimile:    415-834-9070

5  Attorneys for Defendants
   Hines Interests LP
6

7

8                    UNTIED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  WHITSON HUNTER, D'HANTE JACKSON,    )  Case No.   4:21-cv-6316
    individuals,                        )
12                                      )
              Plaintiff,                )  **NOTICE OF REMOVAL BY HINES**
13                                      )  **INTERESTS LIMITED PARTNERSHIP**
        vs.                             )  **UNDER 28 U.S.C. § 1441 PURSUANT TO 28**
14                                      )  **U.S.C. § 1332**
    HINES GS PROPERTIES LLC, a corporation; )
15  and DOES 1 through 100,             )  State Complaint Filed: July 7, 2021
                                        )
16                                      )
              Defendant.                )
17  _____ )

18

19     TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20     PLEASE TAKE NOTICE that defendant Hines Interests Limited Partnership ("Hines"),

    erroneously sued as "Hines GS Properties LLC" ("Defendant") by and through the undersigned
21
    counsel, hereby remove this action to the United States District Court for the Northern District of
22
    California, pursuant to 28 U.S.C. § §1332 and 1441, on the grounds that there is complete diversity
23
    of citizenship between plaintiffs Whitson Hunter and D'Hante Jackson, citizens of the State of
24
    California, and Defendant, which is a citizen of the State of Texas, and the amount in controversy
25
    exceeds the jurisdictional minimum of $75,000, exclusive of interests and costs, as set forth in
26
    Section 1332(a).
27
       The foregoing facts were true at the time the Complaint in this matter was filed and remain
28

                                        1
              DEFENDANT HINES INTERESTS LP'S NOTICE OF REMOVAL

true as of the date of the filing of this notice of removal, as more fully set forth below.

1. On July 7, 2021, plaintiff filed this action against Defendant and Does 1 through 100 by filing a complaint in the Alameda County Superior Court entitled *Whitson Hunter, et al. v. Hines GS Properties LLC,* Case No. RG21104022. (Attached as part of Exhibit "A")

2. The Complaint was served on Defendant on July 16, 2021.  A copy of the Proof of Service evidencing service of process is attached hereto as Exhibit "B".

3. Exhibit "A" includes copies of the above-referenced Complaint, Summons, Civil Case Cover Sheet, and related Alameda County Superior Court new case materials and constitute true and correct copies of all process, pleadings, and orders in the Superior Court, and served on Defendant.

4. Except for the filing of the plaintiffs' Complaint, no proceedings have taken place in connection with this action in the Alameda County Superior Court.

5. This Notice of Removal was filed with the Clerk of the United States District Court within 30 days after service of the Complaint upon Defendant, and therefore, this Notice is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros., Inc., v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).  The Complaint was the first paper from which Defendant could ascertain the action was removable.

6. The fictious defendants designated as Does 1 through 100 in the Complaint are merely fictitious defendants who have not been served and whose citizenship shall be disregarded for the purposes of this removal. 28 U.S.C. § 1441 (b); *Fristoe v. Reynolds Metal Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980).

7. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. 1441.

8. Plaintiffs were at the time of filing the action, and still are, citizens of the State of California. See Exhibit "A", Complaint, ¶¶ 1 and 5.

9. Defendant is a privately held Delaware limited partnership with its principal place of business in Houston, Texas.  See Exhibit "C", Declaration of Jay Bennett, ¶ 2.

1    10.    As noted, Defendant is a Delaware limited partnership having a principal place of

2    business in Houston, the State of Texas.  Accordingly, Defendant is considered a citizen of Texas for

3    diversity purposes.  *Harris v. Rand*, 682 F.3d 884, 850 (9th. Cir. 2012).  Defendant's "nerve center,"

4    and therefore its principal place of business is Texas because Defendant maintains its company

5    headquarters in Texas and their "officers direct, control, and coordinate the[ir] company[ies]'

6    activities" in Texas.    Declaration of Jay Bennett, ¶ 2.  *See Hertz Corp. v. Friend*, 130 S.Ct.

7    1181,1192 (2010) (ruling that the "nerve center" test is the appropriate test to apply when

8    ascertaining a corporation's principal place of business).

9    11.    This Court therefore has original jurisdiction of this action under 28 U.S.C. 1332

10   because Defendant is a citizen of Texas and plaintiffs are citizens of California.

11   12.    With respect to the amount in controversy, "a defendant's notice of removal need

12   only include a plausible allegation that the amount in controversy exceeds the jurisdictional

13   threshold." *Dart Cherokee Basin Op. Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  The amount in

14   controversy for jurisdictional purposes is determined by the amount of damages or the value of the

15   property that is the subject of the action. *Hunt v. Washington State Apple Advertising Comm'n.,*432

16   US 333, 347-348 (1977); *Meisal v. Allstate Indem. Co.,* 357 F.Supp 2d 1222, 1225 (E.D. Cal. 2005).

17   This amount may include compensatory damages for "general " or "special" damages (pain and

18   suffering, as well as out-of-pocket loss).  In addition, this amount may also include punitive damages

19   if they are recoverable as a matter of state law and it cannot be said to a legal certainty that plaintiff

20   would not be entitled to recover the jurisdictional amount. *Anthony v. Security Pacific Financial*

21   *Services, Inc.* 75 F.3d 1250, 1253-1254 (5th Cit. 1998).  Finally, this amount may include attorneys'

22   fees if recoverable by plaintiff by statute, regardless of whether the fee award is mandatory or

23   discretionary. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998); *Sawyer v.*

24   *Retail Data, LLC,* 2015 WL 3929695 at *3, (C.D. Cal. 2015).

25   13.    Plaintiff Whitson Hunter alleges that he began working for Defendant as a Utility

26   Engineer on or about October 7, 2019. Exhibit "A", Complaint, ¶ 8.  Plaintiff D'Hante Jackson

27   alleges that he began working for Defendant as a Stationary Engineer on or about January 5, 2020.

28   Exhibit A, ¶ 33.  The positions that the plaintiffs alleged they were employed in by Defendant at the

Facebook Fremont location were a Utility Engineer and Stationary Engineer.  While employed at the Facebook Fremont site, plaintiff Whitson Hunter was paid $31.36 hour and plaintiff D'Hante Jackson was earning $57.02 per hour. See Exhibit "C", Declaration of Jay Bennett.  On an annual basis, calculated based on a 40 hour work week, the plaintiffs' rates of pay are equivalent to earning $65.228.80 and $118,601.60 a year, respectively.

14.     Plaintiffs seeks general and special damages according to proof, as well as compensatory damages past and future lost earnings, other employment benefits, prospective damages, and damages for humiliation, embarrassment, emotional distress and mental anguish. Exhibit "A", Complaint, ¶¶ 51, 54, 58, 59.  The plaintiffs' Complaint alleges that the plaintiffs were subjected to a shocking and egregious pattern of racist behavior and incidents while working at the Facebook Fremont site.  Plaintiffs' Complaint seeks recovery against the defendants under theories of (1) Race Discrimination in Violation of California Government Code §§12940 et seq., the Fair Employment and Housing Act ("FEHA"); (2) Race Harassment in Violation of FEHA; (3) Failure to Prevent Race/Color Discrimination in Violation of FEHA; (4) Failure to Provide Reasonable Accommodation in Violation of FEHA; and (4) International Infliction of Emotional Distress.

15.     A plaintiff prevailing on a cause of action for violation of FEHA is entitled to recovery all economic and noneconomic damages and their attorneys' fees.  *State Personnel Bd. v. Fair Employment & Housing Commission,* 39 Cal.3d 422, 434 (1985); Cal. Government Code § 12965(b) (prevailing party may recover reasonable attorney's fees and costs, including expert witness fees).  The Complaint seeks recovery of lost wages, front pay, back pay, other special damages, general damages for mental pain, anguish and emotional distress, costs of suit; attorneys' fees. (Exhibit "A", Complaint, ¶¶ 50-63; Prayer for Relief at p. 14.).  These allegations are sufficient for Defendant to establish the amount in controversy has been satisfied.

16.     Finally, the Court should also consider plaintiff's claim for prevailing party attorney's fees in determining the amount in controversy.  "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Sawyer, supra* at *3. Here, FEHA authorizes such an award.  See Government Code § 12940 et seq. *See*

*Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (post-removal fees contribute to amount in controversy when fees are authorized by law); *Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (post-removal attorneys' fees are part of the "total 'amount at stake,' " quoting *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)); *see also Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014). Here, plaintiff's claim for fees is authorized by Cal. Gov't Code § 12965(b), and thus their post-removal attorneys' fees should be considered part of the "amount at stake" in the action. *See Theis*, 400 F.3d at 662. Maintaining even a single-plaintiff employment discrimination claim has been held to "undoubtedly require substantial effort from counsel." *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2009). Even if plaintiff's attorneys' fees here would alone not satisfy the amount in controversy requirement, when viewed in combination with the special and general compensatory damages sought by plaintiffs, the jurisdictional minimum is satisfied.

17.     Pursuant to 28 U.S.C. §1441(a), removal to the United States District Court for the Northern District of California is proper because that District embraces the Alameda County Superior Court, California, the place where this action is currently pending. See 28 U.S.C. §93(c).

18.     Pursuant to 28 U.S.C. §1446(d), Defendant will promptly file a copy of this Notice of Removal in the Alameda County Superior Court, and give written notice of the removal of the action to counsel for the plaintiffs.

19.     By removing the action to this Court, Defendant does not waive any defenses, objections or motions available to it under state or federal law. Defendant expressly reserves the right to move for dismissal of plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

20.     Therefore, Defendant files this Notice of Removal of this action from the Superior Court of the State of California in and for the County of Alameda, in which it is now pending, to United States District Court for the Northern District of California.

WHEREFORE, pursuant to 28 U.S.C. §§1332 and 1446, Defendant respectfully removes to this Court the action docketed under Case No. RG21104022 in the Superior Court of Alameda

1044098\308742689.v1

1  County, California.

2

3  DATED:  August 16, 2021                    HINSHAW & CULBERTSON LLP

4

5                                             By: /s/ David I. Dalby
                                                  DAVID I. DALBY

6                                                 Attorneys for Defendants
                                                  Hines Interests LP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6
DEFENDANT HINES INTERESTS LP'S NOTICE OF REMOVAL

1044098\308742689.v1

# EXHIBIT "A"

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

JUL 07 2021

CLERK OF THE SUPERIOR COURT
By ANDREL GOSPEL

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HINES GS PROPERTIES LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WHITSON HUNTER and D'HANTE JACKSON

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

24405 Amador Street, Hayward, CA 94544

**CASE NUMBER:** *(Número del Caso):*
RG21104022

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

ADANTE D. POINTER, ESQ., SBN 236229, 1901 Harrison St, Ste. 1140, Oakland CA 94612; ANN M. KARIUKI, ESQ., SBN 283306

DATE:
*(Fecha)* JUL 07 2021

Chad Finke
**Executive Officer/Clerk**

Clerk, by
*(Secretario)* ANDREL GOSPEL , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒☒ on behalf of *(specify):* HINES GS PROPERTIES LLC

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☒☒ other *(specify):* corporation code 17061

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov


 Print this form | Save this form 



## Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o   **Private Mediation**:  This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial and the rules of evidence are often relaxed.  Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o   **Judicial Arbitration Program** (non-binding):  The judge can refer a case or the parties can agree to use judicial arbitration.  The parties select an arbitrator from a list provided by the court.  If the parties cannot agree on an arbitrator, one will be assigned by the court.  There is no fee for the arbitrator.  The arbitrator must send the decision (award of the arbitrator) to the court.  The parties have the right to reject the award and proceed to trial.

o   **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated.  This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

## Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations.  Trained volunteer mediators provide these services.  Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA  94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY |
|---|
| STREET ADDRESS:<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME |

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT: |  |
|---|---|

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)<br>AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544 or Fax to (510) 267-5727.

1.  Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

     Date:                              Time:                          Department:

2.  Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

     ☐ Court mediation            ☐ Judicial arbitration
     ☐ Private mediation          ☐ Private arbitration

3.  All parties agree to complete ADR within 90 days and certify that:

     a.  No party to the case has requested a complex civil litigation determination hearing;
     b.  All parties have been served and intend to submit to the jurisdiction of the court;
     c.  All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
     d.  Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
     e.  Case management statements are submitted with this stipulation;
     f.  All parties will attend ADR conferences; and,
     g.  The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
          (TYPE OR PRINT NAME)                              (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____

| Form Approved for Mandatory Use<br>Superior Court of California,<br>County of Alameda<br>ALA ADR-001 [New January 1, 2010] | **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)<br>AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | Cal. Rules of Court,<br>rule 3.221(a)(4) |
|---|---|---|

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____     ▶ _____
        (TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

_____     ▶ _____
        (TYPE OR PRINT NAME)                (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| ADANTE D. POINTER, ESQ., SBN 236229; POINTER & BUELNA, LLP<br>1901 Harrison St, Ste. 1140, Oakland CA 94612; ANN M. KARIUKI, ESQ., SBN 283306<br><br>TELEPHONE NO.: 510-929-5400    FAX NO. *(Optional):* 510-929-5400<br>ATTORNEY FOR *(Name):* Plaintiffs WHITSON HUNTER and D'HANTE JACKSON | **ENDORSED FILED ALAMEDA COUNTY**<br><br>JUL 0 7 2021<br><br>CLERK OF THE SUPERIOR COURT<br>By ANDREL GOSPEL<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: CIVIL DIVISION

CASE NAME:
WHITSON HUNTER, et al., v. HINES GS PROPERTIES LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG21104022 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* FOUR
5. This case [ ] is  [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 7, 2021

Ann M. Kariuki, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

1  **ADANTÉ D. POINTER, ESQ., SBN 236229**
   POINTER & BUELNA, LLP
2  LAWYERS FOR THE PEOPLE
   Wells Fargo Center
3  1901 Harrison St., Suite 1140,
   Oakland, California 94612
4  Telephone: (510) 929-5400
   Email: APointer@LawyersFTP.com
5
6  **ANN M. KARIUKI, ESQ., SBN 283306**
   LAW OFFICES OF ANN M. KARIUKI
7  2831 Telegraph Ave
   Oakland, CA 94609
8  Telephone: (510) 519-7264
   Facsimile: (510) 217-3470
9  Email: ann@lawofficesofamk.com

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **IN AND FOR THE COUNTY OF ALAMEDA**

13

14  WHITSON HUNTER, D'HANTE JACKSON,    )   CASE NO.: **RG21104022**
    individuals;                        )
15                                      )   **COMPLAINT FOR:**
                                        )
16              Plaintiffs,             )
                                        )   1. **DISCRIMINATION IN**
17         v.                           )      **VIOLATION OF FEHA (RACE);**
                                        )   2. **HARASSMENT IN VIOLATION**
18  HINES GS PROPERTIES LLC, a corporation; )      **OF FEHA (RACE);**
    DOES 1-100,                         )   3. **FAILURE TO PREVENT**
19                                      )      **HARASSMENT;**
                                        )   4. **INTENTIONAL INFLICTION**
20              Defendants.             )      **OF EMOTIONAL DISTRESS;**
                                        )
21                                      )
                                        )
22                                      )
                                        )   **DEMAND FOR JURY TRIAL**
23                                      )
                                        )
24                                      )
                                        )
25  _____ )

26

27

28

                              -1-

COMPLAINT FOR DAMAGES

**ENDORSED FILED**
**ALAMEDA COUNTY**

JUL 0 7 2021

CLERK OF THE SUPERIOR COURT
By _____ ANDREL GOSPEL
                                  Deputy

1    Plaintiffs WHITSON HUNTER and D'HANTE JACKSON complain and plead as follows:

2    **GENERAL ALLEGATIONS**

3    1.    Plaintiffs WHITSON HUNTER and D'HANTE JACKSON ("Plaintiffs") are

4    African-American men residing in the State of California and at all relevant times work/worked for

5    HINES GS PROPERTIES LLC, in the County of Alameda, California.

6    2.    At all relevant times, Defendant HINES GS PROPERTIES LLC, ("Defendant"

7    hereinafter, "HINES") was and now is registered and doing business in the State of California with

8    regional business offices located at 101 California Street, Suite 1000, San Francisco, CA 94111.

9    On information and belief, HINES is a contractor for FACEBOOK, INC. (hereinafter "Facebook"),

10    hired to perform services and/or manage Facebook's building facilities located at the Facebook

11    Fremont Dumbarton Campus in Fremont, California 94555.

12    3.    The true names and capacities of Defendants sued herein as Does 1 through 100,

13    inclusive, are unknown to Plaintiffs, but Plaintiffs will amend this Complaint when and if the true

14    names of said Defendants become known to them.  Plaintiffs are informed and believe and based

15    thereon allege that each of the Defendants sued herein as a Doe is responsible in some manner for

16    the events and happenings herein set forth and proximately caused injury and damages, and any

17    reference to "Defendant" shall mean "Defendant and each of them."

18    4.    Plaintiffs are informed and believe, and on that basis allege, that each Defendant,

19    including each of the DOE defendants, was the agent, ostensible agent, servant, aider and abettor,

20    co-conspirator, partner, joint venturer, representative and/or associate of each defendant, and was at

21    all times relevant herein acting within the course and scope of his, her or its authority as agent,

22    ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative

23    and/or associate, and with the knowledge, authorization, consent, permission, and/or ratification of

24    each defendant.  On information and belief, all actions of each Defendant alleged herein were

25    ratified and approved by the officers and/or managing agents of each defendant, whether DOE or

26    otherwise.

27    ///

28    ///

-2-

COMPLAINT FOR DAMAGES

## FACTUAL BACKGROUND

**Whitson Hunter**

5.     At all relevant times, Plaintiff Whitson Hunter (hereinafter "Plaintiff Hunter" or "Mr. Hunter") was and is a resident of Alameda County.

6.     Plaintiff Hunter received early training in construction and maintenance work from his father, who purchased, renovated and sold homes in Oakland, California when he was growing up. From approximately eight years old, Plaintiff helped out on his father's construction projects by digging ditches, doing demolition work, and he also received general training on HVAC and plumbing systems.

7.     Prior to his position with HINES, Plaintiff Hunter was employed by the City of Oakland at the Lake Merritt Boating Center, as a Park Attendant from 2015 to 2019. During this same time frame, Plaintiff Hunter was also employed on a part-time basis as an Associate at The Home Depot in various capacities for approximately four years.

8.     In approximately August 2019, Plaintiff Hunter learned that Hines was hiring an entry-level position in the Bay Area. Plaintiff Hunter forwarded his resume for consideration for the position. Shortly thereafter, Plaintiff was contacted for an interview with three managers from Hines. After this screening process, Plaintiff Hunter was provided a link to formally submit his application for the Hines Utility Engineer position. In September 2019, Plaintiff Hunter received an offer for the position with Hines at Facebook's Fremont Dumbarton Campus in Fremont, CA, and was ultimately hired on October 7, 2019.

9.     Plaintiff Hunter's primary job duty as a Hines Utility Engineer was providing preventative maintenance of Facebook Inc.'s buildings on its Fremont campus. Upon arriving for his first day of employment at the Facebook Fremont campus, Plaintiff Hunter was instructed to shadow his fellow co-workers as part of his training. Plaintiff's on-the-job training included getting familiar with the buildings and where certain key things were located like: utility closets, gas and water valves, etc.

10.     In the first couple of months of his employment, Plaintiff Hunter does not recall any formal or standardized training provided by Hines or Facebook, other than the initial orientation

-3-

1  provided to all employees before coming onto the Facebook campus.

2      11.    Plaintiff Hunter soon learned that he was the only African-American employed by

3  Hines at the Facebook Fremont campus.  Plaintiff initially perceived the position with Hines and

4  Facebook as an opportunity of a lifetime, but within a few months of starting the position, it turned

5  into an unbearable environment that caused him great distress.

6      12.    Plaintiff Hunter was exposed to an unprofessional and racially hostile work

7  environment, which only intensified over the duration of his employment.  On his first day of

8  employment, Plaintiff shadowed a fellow co-worker named David Castaneda, who was an

9  Apprentice Utility Engineer.  Mr. Castaneda asked Plaintiff "who did you know to get this job" and

10  "Are you John Jordan's snitch?".  Plaintiff Hunter did not know what to make of Mr. Castaneda's

11  questions.

12      13.    During his first month of employment, Plaintiff Hunter also shadowed another

13  Apprentice named Josue Castro.  When Mr. Castro made small talk, he consistently and casually

14  used the word "Nigger" in his conversations with Plaintiff.  Plaintiff was shocked that Mr. Castro

15  used this type of language in the workplace, and with such ease and comfort.  Mr. Castro also told

16  Plaintiff Hunter that his uncle works for Hines and helped him obtain the position with the

17  company.

18      14.    David Castaneda made frequent unsolicited comments about Black people to Mr.

19  Hunter.  Castaneda's comments were uninvited and seemed calculated to intimidate Mr. Hunter.

20  For example, around January 2020, Castaneda mentioned to Plaintiff Hunter that Hines had another

21  Black employee before Plaintiff was hired, but he was terminated because "he did not fit in".

22  Shortly thereafter, when Plaintiff D'Hante Jackson was hired by Hines, Mr. Castaneda told

23  Plaintiff Hunter that he was surprised that he did not know Plaintiff Jackson because they were

24  both Black men and from the City of Oakland.

25      15.    In February 2020, during an engineering team meeting, Plaintiff Hunter was offered

26  an overtime shift by the Hines supervisor, Chief Sean Bayone.  Unfortunately, Plaintiff Hunter had

27  to turn it down due to pre-existing plans to celebrate his girlfriend's upcoming birthday and

28  Valentine's Day.  Josue Castro who was present at the meeting blurted out to Plaintiff; "now that

-4-

1  you got that Facebook money, you can take your girl out and buy her something nice".

2      16.    After the meeting, Plaintiff Hunter told Chief Sean Bayone that he was highly

3  offended by Mr. Castro's comment during the meeting.  While Chief Bayone stated that Josue's

4  comments were out of line, no immediate reprimand or follow-up was pursued.  This lack of action

5  would become a pattern with respect to unprofessionalism on the Hines team, as well as

6  harassment that Plaintiffs would endure at the workplace and around the Facebook campus.

7      17.    Racial insensitivity and harassment became rampant at the Facebook Fremont

8  Campus and was not limited to the Hines staff.  Mr. Hunter experienced the same from the kitchen

9  staff.  When Plaintiff Hunter ran into Alberto, a member of the kitchen staff in the parking lot,

10  Alberto also made it a point to use the word "Nigger" during their conversation on multiple

11  occasions.  When Plaintiff told Alberto to stop using the word, Alberto responded, "yea,

12  whatever!".  Alberto was undeterred as he continued to frequently and freely use inappropriate and

13  racially charged language.

14      18.    Plaintiff Hunter recalls speaking with another contractor named Octavia, a

15  Medallion Coordinator.  Octavia was inebriated and told Plaintiffs Hunter and Jackson that he was

16  five percent (5%) Black.  Octavia went on to explain that Black people did not know who they are,

17  but he did because he had a DNA test.

18      19.    On another occasion in early March 2020, Plaintiff Hunter was asked to go

19  assemble and install a cabinet located at the kitchen loading dock.  When Ricardo, one of the

20  members of the kitchen staff, saw Plaintiff arrive to put the cabinet together, he exclaimed; "so

21  they sent the Niggers again!".  Plaintiff asked Ricardo "What did you just say?", and Ricardo

22  mumbled to himself and walked off.

23      20.    Throughout these racially charged encounters on the Facebook campus, Plaintiff

24  Hunter began to report his experiences to Hines Chief Sean Bayone, including incidents involving

25  the use of the "N" word, and insults during business meetings.  Plaintiff Hunter also reported being

26  repeatedly assigned tasks outside of his scope of work, which would have resulted in his

27  termination if anything dangerous occurred from handling unauthorized systems.  While Chief

28  Bayone admitted in some instances that the conduct reported was improper, it is unclear if the

-5-

1  Chief ever made a record of Plaintiffs' Hunter's complaints as requested.  The Hines company
2  seemed to have a policy of keeping misconduct internal and kept quiet, and Plaintiff Hunter was
3  instructed not to report these incidents externally to Facebook or anyone else.

4      21.     Plaintiffs not only endured racist slurs across the Facebook campus, but their mere
5  presence on the campus was questioned.  Even after working on the Fremont campus for months,
6  Plaintiffs were continuously followed and surveilled while performing their job duties.  On one
7  occasion, Plaintiff Hunter and Jackson were on the roof of a building removing used air filters
8  when they noticed an employee of the campus' general contractor, SC Builders intently watching
9  them.  The SC Builders worker took out his phone and appeared to make a phone call.  Shortly
10  thereafter, three men (security and another man) came over to the building where Plaintiffs were
11  working and began to photograph Plaintiffs.

12      22.     Plaintiffs watched as these employees racially profiled them while doing their jobs,
13  presumably because they did not think Black men were authorized to be there, despite Facebook's
14  strict security protocols to get onto the Campus.  These SC Builders employees later claimed that
15  "[they] were not taking pictures" of Plaintiffs when they realized that Plaintiffs took note of their
16  actions.  Shortly after the picture incident, another SC Builders employee singled out Plaintiffs
17  Hunter and Jackson and questioned their presence in another building while they were in full safety
18  gear with badges and hard hats performing their duties.  The Facebook culture on the Fremont
19  campus treated Mr. Hunter as an uninvited guest who did not belong there.  That sentiment lasted
20  from his first day of work and continued unabated.

21      23.     Between June and August 2020, Plaintiff Hunter found himself being followed
22  around the Fremont Facebook Campus by a security guard while performing his job duties.
23  Although the campus has over fifteen (15) buildings, one particular yet to be identified security
24  officer on a bicycle showed up at every building Plaintiff found himself performing maintenance or
25  inspection duties.

26      24.     Plaintiffs began to fear for their safety and discussed being each other's point of
27  contact in case an emergency while on the Facebook Campus.  Plaintiffs felt unsafe in the
28  workplace and did not know the intention of the security guards, or other contractors that showed

-6-

1  hostility towards Plaintiffs.

2      25.   Hines management on the Fremont Facebook campus also exhibited racial hostility.

3  In June 2020, Plaintiff Hunter was having a casual conversation with another Utility employee

4  named Luis Contreras, when Assistant Chief Mark Watzke interrupted their conversation and

5  proclaimed that he did not know why, "[Plaintiff] was mad that Black people get shot by police,

6  because [you] guys do sixty percent (60%) of the crime". Chief Watzke also claimed Black people

7  were crossbred with Irish blood. Watzke comments went beyond the scope of the conversation the

8  two men were having and directed aggression towards Plaintiff Hunter.

9      26.   The hostile work environment was widespread on the Facebook campus and only

10  seemed to escalate. On or about August 20, 2020, Plaintiff Hunter was performing his daily

11  building rounds to ensure all major systems were functioning and conducting various readings.

12  Plaintiff went to inspect an ATS system closet in a larger electrical room that was not attached to a

13  building. A key is needed to enter the electrical room. Inside the closet in the electric room,

14  Plaintiff Hunter found a yellow rope that was tied into a noose and hanging at eye level. Plaintiff

15  Hunter was shocked by what he saw, as there was no apparent reason for the rope to be there or for

16  it to be tied into a noose. Plaintiff Hunter decided to take a photo of the noose but left it

17  undisturbed in the closet.

18      27.   After finding the noose in the electrical closet, Plaintiff Hunter called Plaintiff

19  Jackson to advise him of what he found. Up to that point, any reports by Plaintiffs to Hines

20  management were swept under the rug, and no direct answer or affirmative steps were taken to

21  address the illegal conduct in the workplace. Nevertheless, Plaintiff Jackson agreed that Plaintiff

22  Hunter should make a report because of the historical context and potential threat of this hate

23  symbol. Plaintiff Hunter called and sent a photo of the noose to Hines Chief Sean Bayone.

24      28.   Initially, Bayone seemed to be concerned of the noose finding, and asked where it

25  was located. However, shortly thereafter, Chief Bayone concluded the rope was not a noose and

26  suggested that it may have already been in the closet. Chief Bayone asked Plaintiff Hunter to take

27  it down. Plaintiff Hunter decided to do some research and he went into every closet similar in

28  nature on the Facebook campus to see if there was any other rope hung in a similar fashion.

-7-

COMPLAINT FOR DAMAGES

1  Plaintiff did not find any rope of any kind in any of the other electrical closets.

2      29.     To Plaintiffs' knowledge the Facebook Fremont Campus' electrical closets were

3  accessible by the Hines engineering team, and presumably the security team, requiring both a

4  badge and key for entry. Plaintiff Hunter became even more concerned for his well-being on the

5  Facebook campus and did not return to the closet to take down the noose.

6      30.     To Plaintiffs' surprise, Hines took absolutely no action in response to Plaintiff

7  Hunter finding a noose. This incident was also swept under the rug and kept "internal" within

8  Hines.

9      31.     Before the noose was found, Plaintiff Hunter felt unsupported, dismissed and

10  marginalized with respect to the race-based treatment he endured due to the lack of action from

11  Hines management. After finding the noose, Plaintiff felt physically unsafe at the Facebook

12  Dumbarton Campus. He experienced anxiety and stress from not knowing which of his coworkers,

13  or other contractors, may have hung the noose in place. Indeed, Plaintiff had difficulty eating and

14  relaxing and lost weight due to the anxiety and distress. He felt humiliated due to the continuous

15  degrading conduct directed at him, and his supervisor's failure to do anything to address the

16  situation. Plaintiff's Hunter became angry over the noose incident and the stress and anger

17  extended to his household and family.

18      32.     On a few occasions, Plaintiff Hunter requested that Chief Sean Bayone document

19  his complaints about the racist conduct he was subjected to on the Facebook Fremont Campus. It

20  is unclear whether the Chief documented the conduct and whether upper management did not care

21  to stop or prevent this unlawful conduct. As a result, the harassment continued unabated.

22  **D'Hante Jackson**

23      33.     Plaintiff Jackson was hired by Hines as a Stationary Engineer at the Facebook

24  Fremont Campus on or about January 5, 2020. Plaintiff had some prior experience working at a

25  Facebook Campus since he previously worked at the main Facebook headquarters in Menlo Park,

26  California for a few months in 2017. In 2017, Plaintiff worked at the Facebook Menlo Park facility

27  under a Medallion's Facility Services contract.

28

-8-

34.     While working at the Facebook Menlo Park campus in 2017, Plaintiff Jackson learned about a position opening up with Hines for a project in San Francisco. Plaintiff applied for the position and was hired as a Logistics Facility Coordinator for Hines in San Francisco. The logistics position was a bit different from the hands-on maintenance engineering work Plaintiff Jackson had been previously doing. Plaintiff Jackson went on to work as a Facilities Coordinator on two projects for Hines in San Francisco between 2017 to 2019.

35.     Towards the end of 2019, Plaintiff Jackson learned about an opening for a Utility position with Hines which was in line with his skills and training. Plaintiff Jackson applied for the position and tested as a Journeyman-level engineer. Plaintiff Jackson was hired by Hines as a Journeyman Stationary Engineer, and on January 5, 2020, he was placed at the Facebook Fremont Dumbarton Campus.

36.     On his first day of work at the Fremont campus, Plaintiff Jackson recognized three Apprentice Utility Engineers, Kevin Gormly, David Castaneda and Kenny Takata, who previously worked on the Facebook Menlo Park campus when Plaintiff briefly worked for Medallion. At the first team meeting, the three Apprentices questioned Plaintiff Jackson about how he got his job, who did he know, and whether he was qualified for the position. Plaintiff Jackson informed them that he interviewed with the District Manager and was hired. Plaintiff Jackson did not announce that prior to working for Medallion, he had two years of training and certification in HVAC and heating, ventilation and air-conditioning maintenance. The Apprentices did not seem to be satisfied with Plaintiff's response and presumably questioned how Plaintiff Jackson, an African-American man was able to qualify for a journeyman position before they were eligible to do so. In fact, Kenny Takata would follow Plaintiff Jackson around while he completed his tasks and quiz him about the nature and quality of his work.

37.     Upon arrival on the Fremont Campus, similar to Plaintiff Hunter's experience, the conversations with the Hines employees immediately went outside the bounds of professionalism and into a toxic zone. Plaintiff Jackson delt with harassing comments from his Hines coworkers on almost a daily basis. As a Journeyman Engineer, Plaintiff would often utilize a Utility Engineer or an apprentice to assist him. However, based on the lack of professionalism and offensive conduct

-9-

1  he often experienced, Plaintiff Jackson found himself utilizing Plaintiff Hunter more often because
2  he had a good work ethic, and he also did not want to deal with the conduct of the other utility
3  engineers.

4         38.     On or about February 19, 2020, Plaintiff Jackson and Hunter were dispatched to the
5  kitchen one evening to fix a priority clog during a busy dining period.  Plaintiff Jackson began
6  working on the sink when Alberto walked in and started yelling at Plaintiffs: "Hey man, what the
7  Fuck man!", "You don't know what you're doing!", "You Niggers need to stop", "I'm trying to tell
8  you; I know where the clog is!", "You Niggers don't know shit!".

9         39.     Plaintiff Jackson chose to the ignore the irate behavior and do his job, but Alberto
10  continued to get louder.  Plaintiff Jackson asked Alberto to calm down and explained to him that he
11  was there to do his job with Plaintiff Hunter.  At some point, Alberto's kitchen manager, Angela
12  heard the commotion and asked what was going on.  Plaintiff Jackson asked Angela to step away to
13  talk due to the tension in the kitchen.  Plaintiff Jackson explained what was happening to Angela,
14  who instructed Plaintiff to write up a small summary of what occurred and to send it to her.
15  Alberto was removed from the area, and Plaintiff Jackson then returned to the kitchen to complete
16  the task.  Later on that day, Plaintiff Jackson followed up with the email to Angela as requested.

17         40.     The day after the incident with Alberto in the kitchen, Chief Bayone approached
18  Plaintiff Jackson and informed him that he was made aware of his complaint.  Chief Bayone told
19  Jackson that if a similar incident occurred again to tell him first so that he did not look bad to his
20  superiors.

21         41.     Similar to Plaintiff Hunter's experience, Josue Castro also regularly spewed out
22  very offensive racial stereotypes about what seemed to be his perception of Black people to
23  Plaintiff Jackson.  Josue also casually used the word "Nigger" while talking to Plaintiff Jackson.
24  Plaintiff promptly informed Josue that he did not like Josue's the use of the "N" word, and to call
25  him by his name; a message that did not resonate for months.  On one occasion, Josue told Plaintiff
26  Jackson that "he could move out of the ghetto now."  Plaintiff Jackson informed Josue that he does
27  not currently live in a ghetto.  Plaintiff Jackson reported Josue's comments and use of the "N"
28  word to Chief Sean Bayone, whose standard response was that he would take care of it, and that

-10-

COMPLAINT FOR DAMAGES

1  everyone should be able to come to work and not feel like that.  However, there was never any

2  follow-up from Chief Bayone or upper management.

3        42.     On another occasion, Plaintiff Jackson needed to gain access/password to get into

4  the data rooms at the Facebook Fremont Campus.  Plaintiff had to travel to Facebook's corporate

5  headquarters in Menlo Park to obtain the access codes.  Chief Sean Bayone told Plaintiff Jackson

6  to ride with Josue Castro to Menlo Park.  On the drive there, Josue decided to play some trap music

7  from his phone through the car's radio.  Plaintiff recalls Josue playing a song entitled "My Nigga"

8  by rapper YG featuring Jeezy, where the lyrics basically repeated "my nigga" over and over again.

9  During this drive, Plaintiff felt as if he was trapped inside a cartoon or minstrel show while at

10  work.

11        43.     Josue also decided that he wanted to discuss rap music, and in doing so, told

12  Plaintiff Jackson a myriad of racially offensive things including: "all us Niggas is good because we

13  from Oakland", "now you got you a good job, you can get you a couple of baby mamas and live

14  like a king", "you know how we do from The Town".

15        44.     Plaintiff Jackson again shut down this type of narrative and told Josue, "that's not

16  how I do," and Plaintiff again reiterated that he was not his "Nigga", his name was "D'Hante", and

17  he did not want to hear or be called the "N" word.  Upon his return to the Facebook Fremont

18  Campus, Plaintiff reported this car incident to Chief Sean Bayone whom Plaintiff Jackson had

19  previously worked with for Hines in San Francisco.  Chief Bayone's only response to Plaintiff was

20  that he did not have to ride with Josue anymore.

21        45.     While Plaintiff Jackson enjoyed his job, the Facebook/Hines hostile work

22  environment became very damaging to his mental and emotional wellbeing.  Plaintiff Jackson

23  experienced stress on a constant basis as a result of the harassment and unexpected actions of other

24  employees at work.  Plaintiff Jackson began to dread returning to the jobsite on a daily basis.  He

25  had ruminating thoughts of being hung by a noose at work, as well as nightmares about being hung

26  inside an electrical closet like the one where the noose was found.  Plaintiff Jackson was fearful

27  going to work and felt depressed.  After the noose incident, Plaintiff Jackson also began to feel

28  understandably mistrustful of his coworkers and became hyper-vigilant about his safety while at

-11-

1  work.

2        46.     While Plaintiff Jackson had seen some racism in the workplace before, he ignored

3  the Facebook/Hines' microaggressions he experienced at work because he was happy to be

4  employed and did not want to lose his job.  Nevertheless, when Plaintiff Hunter found a noose in

5  the electrical closet, Plaintiff Jackson reached a breaking point and could no longer ignore the

6  racism.  Although Plaintiff Jackson had very little confidence in Chief Sean Bayone, he still

7  encouraged his coworker Plaintiff Hunter to report what he found in the closet.  Once again, Chief

8  Bayone remained passive and/or in denial about the unlawful conduct.

9       **Whitson Hunter and D'Hante Jackson**

10        47.     At the end of 2020, Hines ultimately lost the contract with Facebook at the Fremont

11  Dumbarton Campus.  On information and belief, CBRE took over the contract at the Facebook

12  Fremont Campus and was able to take on a majority of the Hines employees already servicing that

13  campus.  Approximately three employees working at the Facebook Fremont campus were

14  terminated when the contract switched from Hines to CBRE.  Plaintiff Hunter was among those

15  who were laid off.

16        48.     Plaintiff Jackson continues to work at the Fremont campus as a CBRE employee

17  and he still reports to Chief Sean Bayone.  Sometime during the month of February 2021, Chief

18  Bayone assigned Plaintiff Jackson to the building where the noose was previously found by

19  Plaintiff Hunter.  Plaintiff Jackson had not been near that building since the noose finding in

20  August 2020 and was dismayed that he was assigned this building after what was reported there.

21        49.     Plaintiffs continue to suffer from severe emotional distress related to the racist

22  treatment they encountered and continue to encounter at the Facebook Fremont Dumbarton

23  Campus.

24                  **FIRST CAUSE OF ACTION**

25                  **RACE DISCRIMINATION (FEHA)**

26        50.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 49,

27  inclusive, of this Complaint as though fully set forth herein.

28        51.     As a proximate result of the wrongful conduct of Defendant, Plaintiffs have

-12-

1 sustained substantial losses in earnings and other employment benefits in an amount according to

2 proof at the time of trial. As a further proximate result of the wrongful conduct of Defendant,

3 Plaintiffs have suffered and continue to suffer humiliation, embarrassment, emotional distress and

4 mental anguish, all to their damages in an amount according to proof at the time of trial

5                           **SECOND CAUSE OF ACTION**

6                    **RACE HARASSMENT IN VIOLATION OF FEHA**

7         52.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 51,

8 inclusive, of this Complaint as though fully set forth herein.

9         53.    During the course of Plaintiffs' employment, Defendant committed unlawful

10 employment practices in violation of Government Code sections 12940 et seq. and failed to prevent

11 the above-alleged acts of race harassment by wholly failing to undertake any prompt and adequate

12 investigation concerning Defendant's unlawful conduct, and by failing to take any action in

13 response to the unlawful conduct of Defendant in violation of Government Code sections 12923

14 and12940(j).

15        54.    As a proximate result of the wrongful conduct of Defendant, Plaintiffs have

16 sustained substantial losses in earnings and other employment benefits in an amount according to

17 proof. As a further proximate result of the wrongful conduct of Defendant, Plaintiffs have suffered

18 and continues to suffer humiliation, embarrassment, emotional distress and mental anguish, all to

19 their damages in an amount according to proof.

20                           **THIRD CAUSE OF ACTION**

21 **FAILURE TO PREVENT HARASSEMENT IN VIOLATION OF FEHA (RACE /COLOR)**

22        55.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 54,

23 inclusive, of this Complaint as though fully set forth herein.

24        56.    A described above, Defendant Hines committed unlawful employment practices in

25 violation of Government Code sections 12940 et seq. and failed to prevent harassment towards

26 Plaintiffs in violation of Government Code sections 12940(j) and 12940(k). Defendant failed to

27 prevent the above-alleged acts of racial harassment and discrimination by wholly failing to

28 undertake any prompt and adequate investigation, and by failing to take any action in response to

-13-

COMPLAINT FOR DAMAGES

1 | the unlawful conduct of its employees and others on the jobsite.

2 |       57.    As a proximate result of the wrongful conduct of Defendant Hines, Plaintiffs were

3 | harassed on the basis of their race and color in violation of Government Code § 12940(a).

4 |       58.    As a further direct and proximate result of Defendant's conduct, Plaintiffs will

5 | suffer additional special damages in the form of lost future earnings, benefits and/or other

6 | prospective damages in an amount according to proof at trial.

7 |       59.    As a further proximate result of the wrongful conduct of Defendant, Plaintiffs have

8 | suffered and continue to suffer humiliation, lack of self-confidence, embarrassment, emotional

9 | distress and mental anguish, all to their damages in an amount according to proof at the time of

10 | trial.

11 | **FOURTH CAUSE OF ACTION**

12 | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

13 |       60.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 59,

14 | inclusive, of this Complaint as though fully set forth herein.

15 |       61.    The conduct of Defendant as set forth above was so extreme and outrageous that it

16 | exceeded the boundaries of a decent society and lies outside the compensation bargain.  Said

17 | conduct was intended to cause Plaintiffs severe emotional distress or was done in conscious

18 | disregard of the probability of causing severe emotional distress.  Said conduct was also in direct

19 | violation of California public policy and Government Code section 12965(b).

20 |       62.    As a proximate result of the wrongful conduct of Defendants, Plaintiffs have

21 | suffered and continue to sustain substantial losses in earnings and other employment benefits in an

22 | amount according to proof.

23 |       63.    As a further proximate result of the wrongful conduct of Defendants, Plaintiffs have

24 | suffered humiliation, lack of self-confidence, embarrassment, emotional distress and mental

25 | anguish, all to their damages in an amount according to proof.

26 | ///

27 | ///

28 | ///

COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant, and each of them, according to proof, as follows:

      a.      For general and special damages, including lost wages, in a sum in excess of the minimum jurisdictional limit of this Court, according to proof at trial;

      b.      For interest at the maximum legal rate;

      c.      For reasonable attorney's fees;

      d.      For costs of suit incurred herein; and

      e.      For such other and further relief as the Court may deem just and proper.

Date: July 7, 2021

LAW OFFICES OF ANN M. KARIUKI

ANN M. KARIUKI
Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.

Date: July 7, 2021

LAW OFFICES OF ANN M. KARIUKI

ANN M. KARIUKI
Counsel for Plaintiffs

-15-

COMPLAINT FOR DAMAGES

Pointer & Buelna, LLP
Attn: Pointer, Adante D.
1901 Harrison St.
Suite.1140
Oakland, CA  94612____

## Superior Court of California, County of Alameda

| | |
|---|---|
| Hunter | No. <u>RG21104022</u> |
| **Plaintiff/Petitioner(s)** | |
| VS. | **NOTICE OF CASE MANAGEMENT** |
| | **CONFERENCE AND ORDER** |
| Hines GS Properties LLC | Unlimited Jurisdiction |
| **Defendant/Respondent(s)** | |
| (Abbreviated Title) | |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
Notice is given that a Case Management Conference has been scheduled as follows:

| | | |
|---|---|---|
| Date: **01/04/2022**<br>Time: **03:00 PM** | Department: **20**<br>Location: **Administration Building**<br>**Fourth Floor**<br>**1221 Oak Street, Oakland  CA  94612**<br><br>Internet: **www.alameda.courts.ca.gov** | Judge:  **Paul D. Herbert**<br>Clerk:  **Ana Liza Tumonong**<br>Clerk telephone:  **(510) 267-6936**<br>E-mail:<br>**Dept20@alameda.courts.ca.gov**<br>Fax:  **(510) 267-1576** |

### ORDERS

1.  **Plaintiff** must:

    a.  **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)); and

    b.  **Give notice** of this conference to all other parties and file proof of service.

2.  **Defendant must** respond as stated on the summons.

3.  **All parties who have appeared before the date of the conference** must:

    a.  **Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724;

    b.  **File and serve** a completed *Case Management Statement* on Form CM-110 at least **15** days before the Case Management Conference (Cal. Rules of Court, rule 3.725); and

    c.  **Post jury fees** as required by Code of Civil Procedure section 631.

4.  If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30.  Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

5.  You are further ordered to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed. You may be able to appear at Case Management Conferences by telephone.  Contact CourtCall, an independent vendor, at least three business days before the scheduled conference.  Call 1-888-882-6878, or fax a service request to (888) 882-2946.  The vendor charges for this service.

6.  You may file *Case Management Conference Statements* by E-Delivery.  Submit them directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to *www.alameda.courts.ca.gov/ff.*

7.  The judge may place a *Tentative Case Management Order* in your case's on-line register of actions before the conference.  This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration.  Check the website of each assigned department for procedures regarding tentative case management orders at *www.alameda.courts.ca.gov/dc.*

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 07/12/2021.

By _____
                        Deputy Clerk

| SHORT TITLE: Hunter VS Hines GS Properties LLC | CASE NUMBER: RG21104022 |
|---|---|

ADDITIONAL ADDRESSEES

Law Office of Ann M. Kariuki
Attn: Kariuki, Ann M.
2831 Telegraph Ave
Oakland, CA   94609

EXHIBIT "B"

# Exhibit "B"

3556911v1 0995895

 **CT Corporation**

**Service of Process Transmittal**
07/16/2021
CT Log Number 539912551

**TO:** Meredith Katopodis
Hines Interests Limited Partnership
2800 Post Oak Blvd Fl 48
Houston, TX 77056-6123

**RE:** Process Served in New York

**FOR:** Hines GS Properties LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | WHITSON HUNTER and D'HANTE JACKSON, etc., Pltfs. vs. HINES GS PROPERTIES LLC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # RG21104022 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/16/2021 at 12:16 |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/16/2021, Expected Purge Date: 07/21/2021 |
| | Image SOP |
| | Email Notification,  Meredith Katopodis  meredith.katopodis@hines.com |
| | Email Notification,  Bryana Uresti  bryana.uresti@hines.com |
| | Email Notification,  LeAnn Cox  leann.cox@hines.com |
| | Email Notification,  Evan J. McCord  evan.mccord@hines.com |
| | Email Notification,  Christine Duplessis  christine.duplessis@hines.com |
| | Email Notification,  Gieun Buk  Gieun.Buk@hines.com |
| | Email Notification,  Ross Irvin  ross.irvin@hines.com |
| | Email Notification,  Michelle Balsara  michelle.balsara@hines.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>28 Liberty Street |

Page 1 of  2 / KM

. CT Corporation

**Service of Process Transmittal**
07/16/2021
CT Log Number 539912551

**TO:**   Meredith Katopodis
Hines Interests Limited Partnership
2800 Post Oak Blvd Fl 48
Houston, TX 77056-6123

**RE:**   **Process Served in New York**

**FOR:**   Hines GS Properties LLC  (Domestic State: DE)

New York, NY 10005

866-203-1500
DealTeam@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                              Fri, Jul 16, 2021

**Server Name:**                RICARDO DELPRATT


Entity Served                    HINES GS PROPERTIES LLC

Case Number                   RG21104022

Jurisdiction                       NY



EXHIBIT "C"

1  ROBERT J. ROMERO (SBN 136539)
   DAVID I. DALBY (SBN 114750)
2  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
3  San Francisco, CA 94111
   Telephone:    415-362-6000
4  Facsimile:    415-834-9070

5  Attorneys for Defendants
   Hines Interests LP

6

7

8                    UNTIED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  WHITSON HUNTER, D'HANTE JACKSON,   )  Case No. CaseNumber
    individuals,                       )
12                                     )  DECLARATION OF JAY BENNETT IN
                  Plaintiff,           )  SUPPORT OF HINES INTERESTS LP
13                                     )  REMOVAL TO DISTRICT COURT
           vs.                         )
14                                     )
    HINES GS PROPERTIES LLC, a corporation;  )  State Complaint Filed: July 7, 2021
15  and DOES 1 through 100,            )
                                       )
16                                     )
                  Defendant.           )
17  _____)

18
        I, Jay Bennett, declare,
19
        1.      I am a Senior Manager at Hines, and have been employed by Hines GS Properties
20
    LLC ("Hines GS") since 1998.  My areas of responsibility at Hines GS include certain aspects of
21
    human resource administration as to several Hines GS affiliated entities.  I have personal knowledge
22
    of the facts recited in this declaration except for those matters stated on information and belief, as to
23
    which I am informed and believe that the matters stated are true.
24
        2.      The defendant entity named in the plaintiffs' complaint, Hines GS, was not the
25
    plaintiffs' employer at the Facebook Fremont location.  I am informed and believe that Hines
26
    Interests Limited Partnership ("Hines Interests L.P.") was the plaintiffs' employer at the Facebook
27
    Fremont location.  Hines Interest L.P.'s partnership articles were recorded in the state of Delaware.
28

                                        1
                    BENNETT DECLARATION IN SUPPORT OF REMOVAL

                                                              1044098\308747453.v1

1   At all times relating to the facts alleged in the plaintiffs' complaint, Hines Interests L.P.'s main

2   corporate office and principal place of business was and is Houston, Texas.

3        3.    For a period of time including the dates alleged in the plaintiffs' complaint, Hines

4   Interest L. P. had a contract to provide engineering services and facilities management for

5   Facebook's Fremont location in Fremont, California.   In that capacity, Hines Interests L. P.

6   employed individuals at the Facebook Fremont location that held the titles of Utility Engineer and/or

7   Stationary Engineer, as the plaintiffs described themselves in their complaint.   While employed at

8   the Facebook Fremont site, plaintiff Whitson Hunter was paid $31.36 per hour and plaintiff D'Hante

9   Jackson was paid $57.02 per hour.

10       I declare under penalty of perjury under the laws of the State of California that the foregoing

11   is true and correct.

12   

13   DATED: August 16, 2021

14                                          Jay Bennett

BENNETT DECLARATION IN SUPPORT OF REMOVAL

1044098\308747453.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**WHITSON HUNTER, D'HANTE JACKSON, individuals v. HINES GS PROPERTIES LLC, a corporation; and DOES 1 through 100**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO:

I am a citizen of the United States and employed in San Francisco, California, at the office of a member of the bar of this Court at whose direction this service was made.  I am over the age of 18 and not a party to the within actions; my business address is One California Street, 18th Floor, San Francisco, California  94111.

On August 17, 2021, I served the document(s) entitled **NOTICE OF REMOVAL BY HINES INTERESTS LIMITED PARTNERSHIP UNDER 28 U.S.C. § 1441 PURSUANT TO 28 U.S.C. § 1332**, on the interested parties in this action as stated below:

Ann M. Kariuki, Esq.
Law Offices of Ann M. Kariuki
2831 Telegraph Avenue
Oakland, CA 94609
Telephone:     510-519-7264
Facsimile:      510-217-3470
Email:  akariukiesq@gmail.com

Adante De Pointer, Esq.
Pointer & Buelna
1901 Harrison Street, Suite 1140
Oakland, CA 94601
Telephone:     510-929-5400
Email:  apointer@lawyersftp.com
*Attorneys for Plaintiffs*

☒  **(BY MAIL):**     I deposited such envelope in the mail at San Francisco, California with postage fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐  **(VIA OVERNIGHT MAIL):**     I deposited such envelope to be placed for collection and handling, via UPS following our ordinary business practices.  I am readily familiar with this business practice for collecting and processing correspondence for UPS.  On the same day that material is placed for collection, it is picked up by UPS at San Francisco, California.

☐  **(BY ELECTRONIC MAIL):**     By transmitting a true copy thereof to the electronic mail addresses as indicated below.

☐  **(BY CM/ECF SERVICE):**     I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on August 17, 2021, at San Francisco, California.

_____
Sherie McLean

2